## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VENCO IMTIAZ CONSTRUCTION
COMPANY,
     Plaintiff.

v.

SYMBION POWER LLC,
     Defendant.

Civil Action No. 16-1737 (JDB)

## MEMORANDUM OPINION

A construction company and its subcontractor are engaged in a long-running dispute over payment for a power plant construction project in Kabul, Afghanistan, between 2008 and 2010. The subcontractor, Venco Imitiaz Construction Company (Venco), eventually won an arbitration award requiring the contractor, Symbion Power LLC (Symbion), to pay $ 8.5 million for the work that Venco performed. Venco now seeks enforcement of that award. Symbion challenges that award here, and also in a separate court proceeding in the United Kingdom. For the reasons explained below, the Court will grant Venco's motion for enforcement of the award, deny Symbion's motion for a stay, and deny as moot Venco's motion, in the alternative, for security.

## BACKGROUND

In 2008, the U.S. Agency for International Development began funding a project to build a power plant in Kabul. The delays and disagreements began shortly thereafter. The facts that follow are undisputed, however, unless otherwise noted.

USAID hired a U.S.-based firm, The Louis Berger Group/Black & Veatch Special Projects Corporation (LBG/BV) to manage the project. LBG/BV then hired Symbion as is its primary contractor. Symbion in turn hired Venco as a subcontractor responsible for certain portions of the

plant construction, namely for the "power blocks" that would house the electrical generators. Resp.'s Br. [ECF No. 7] at 3. LBG/BV and Symbion had a dispute over who was responsible for construction delays (these disputes were unrelated to Venco's work) and, as a result, LBG/BV withheld payment from Symbion. Id. at 3–4; Pet.'s Br. [ECF No. 1-7] at 1. Symbion, in turn, withheld payment from Venco. Resp.'s Br. at 4; Pet.'s Br. at 1. Symbion argues that its contract with Venco permits this, i.e., that the contract conditions payment to Venco on Symbion's receipt of payment from LBG/BV. Resp.'s Br. at 6. Venco takes the opposite view. Pet.'s Br. at 2–3.

According to Symbion, in 2009 LBG/BV and Symbion began arbitration proceedings before a Tribunal of the International Court of Arbitration (ICC), as provided for in their contract. Resp.'s Br. at 5. That tribunal concluded that LBG/BV breached its contract and was not justified in withholding payment from Symbion, but also found that under the terms of the contract, Symbion could not rely on the invoices that it submitted as evidence that it was entitled to full payment. See ICC Case No. 16383/VRO, Symbion Power LLC v. LBG/BV, Final Award (Oct. 24, 2012), Ex. 4 to Resp.'s Br. [ECF Nos. 7-7–7-13] (hereinafter "Prior Award") at 171–73. Instead, the tribunal found that Symbion was required to separately prove the value of its work with evidence beyond the invoices, and was only entitled to payment for the amounts it could separately prove. Id. Venco was not a party to that arbitration proceeding nor did it participate in it in any way.

Separately, in 2013 Venco filed a request for arbitration with the ICC against Symbion, as required by the arbitration clause in their contract. Pet.'s Br. at 3; Resp.'s Br. at 6. A three-arbitrator panel was empaneled pursuant to ICC rules. Pet.'s Br. at 3–4; Resp.'s Br. at 6–7. Before the panel, Venco argued that Symbion had breached its contract by failing to make the required payments. Pet.'s Br. at 2–3; Resp.'s Br. at 6. Symbion argued that its payments to Venco were

predicated on receiving payment from LBG/BV, and also raised counterclaims against Venco for tortious interference with contract, breach of the implied covenant of good faith and fair dealing, and malicious prosecution and abuse of process. Resp.'s Br. at 6. LBG/BV was not a party to the Venco–Symbion arbitration. The arbitration panel reviewed briefings, received written evidence, and held an evidentiary hearing from November 2 through November 11, 2015, where it heard testimony from fact and expert witnesses. See ICC Case No. 19335/AGF/ZF, Venco Imtiaz Constr. Co. v. Symbion Power LLC, Final Award (Jul. 11, 2016), Ex. 2 to Pet.'s Br. [ECF No. 1-2] (hereinafter "Final Award") at 22–24. The panel ultimately issued an award on July 11, 2016, finding almost entirely in Venco's favor. See id. at 140–42. The panel ordered Symbion to pay all unpaid invoices that Venco had submitted, plus interest, attorney's fees, and the cost of arbitration. Id. It also dismissed all of Symbion's counterclaims. Id. In total, this amounted to $ 8,462,516.78. Id.

On August 8, 2016, Symbion filed a motion in the United Kingdom to set aside the award. Venco, in turn, filed the instant motion in this Court to confirm and enforce the award. Petition [ECF No. 1]. Symbion not only opposes Venco's motion, but also filed a motion asking this Court to stay further proceedings pending the outcome of the U.K. proceedings. Resp.'s Br. at 1–2. Symbion's primary argument is that the arbitration proceeding at issue here interpreted the contract in a manner inconsistent with the prior arbitration award between Symbion and LBG/BV, and therefore enforcement of the award in this Court would violate the public policy of issue preclusion. Id. at 1. Venco opposes Symbion's motion for a stay, but in the alternative, requests that if a stay is granted, that Symbion be required to post security in the full amount of the arbitration award. Pet.'s Reply & Opp'n [ECF No. 13] at 1. Symbion opposes the request for security. Resp.'s Reply [ECF No. 17] at 1.

Since the parties completed briefing in this matter, the U.K. High Court of Justice in London, England, has dismissed Symbion's challenge to the arbitral award.  See Symbion Power LLC v. Venco Imtiaz Constr. Co., [2017] EWHC 348 (TCC) (March 10, 2017), Ex. 1 to Status Report [ECF No. 22-1].  Based on the parties' representation during a hearing before this Court on April 18, 2017, Symbion intends to seek leave to appeal that decision.  This Court has not been advised of the time frame in which the U.K. appellate court would grant or deny leave to appeal, or of the time frame in which that court might issue a judgment on the merits, should leave to appeal be granted.

## LEGAL STANDARD

Venco seeks enforcement of its arbitration award under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  See Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"), 21 U.S.T. 2517, codified at 9 U.S.C. §§ 201–08.  Under the New York Convention, which is codified as part of the Federal Arbitration Act (FAA), a "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." Id. § 207.  The FAA therefore "'reflects an emphatic federal policy in favor of arbitral dispute resolution.'"  Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012) (per curiam) (quoting KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011)).  This emphatic federal policy is equally true in enforcing foreign arbitration awards.  See TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 933–34 (D.C. Cir. 2007) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)); see also Newco Ltd. v. Gov't of Belize, 650 F. App'x 14, 16 (D.C. Cir. 2016) (nonprecedential).

One of the enumerated grounds for a court to decline to enforce an award is if "[t]he

recognition or enforcement of the award would be contrary to the public policy of [the] country" where enforcement is sought. New York Convention, art. V(2)(b). Wary of the potentially vast possibilities of this exception, "courts have been careful not to stretch the compass of 'public policy.'" TermRio, 487 F.3d at 938. Rather, the "public policy defense is to be construed narrowly to be applied only where enforcement would violate the [United States'] most basic notions of morality and justice." Id. (quoting Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 306 (5th Cir. 2004); see also Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria, 844 F.3d 281, 289 (D.C. Cir. 2016); Belize Bank Ltd. v. Gov't of Belize, 852 F.3d 1107, 1111 (D.C. Cir. 2017); cf. Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, No. 16-7004, slip op. at 9 (D.C. Cir. Apr. 28, 2017) (describing similar public policy exception in Railway Labor Act as only applicable when "arbitration award . . . transgresses well defined and dominant laws and legal precedents" (internal quotation marks omitted)). Here, Symbion, as the party challenging enforcement of the award, "'bears the burden of proof' of meeting this exacting standard." Belize Bank, 852 F.3d at 1111.

## ANALYSIS

### I.    Issue Preclusion And The Public Policy Exception

Symbion argues that the earlier arbitration award between Symbion and LBG/BV should have had a preclusive effect on the subsequent arbitration award between Symbion and Venco, and that enforcing this later award would violate the public policy of issue preclusion. In particular, Symbion argues that the LBG/BV award determined that a contractor (such as Venco) could not rely only on invoices to establish damages, and instead must prove the actual value of the work performed. See Resp.'s Br. at 9.

Issue preclusion (sometimes known as collateral estoppel) "bars 'successive litigation of

an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)); see also Southern Pac. R. Co. v. United States, 168 U.S. 1, 48–49 (1897) (defining issue preclusion as the "general principle . . . that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies"). Issue preclusion is "[a] fundamental precept of common-law adjudication" that saves litigants "from the expense and vexation attending multiple lawsuits" and "fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–54 (1979).

Symbion argues that because issue preclusion is a "fundamental precept of common-law adjudication," id. at 153, it is therefore one of the "most basic notions of morality and justice," TermRio, 487 F.3d at 938. But a "public policy" sufficient to fall within the exception to the Convention must be "well defined and dominant . . . and not from general considerations of supposed public interests." BCB Holdings Ltd. v. Gov't of Belize, 110 F. Supp. 3d 233, 250 (D.D.C. 2015), aff'd, 650 F. App'x 17 (D.C. Cir. 2016). Symbion has cited no cases, nor can the Court find any, holding that the general policy of issue preclusion is such a "basic notion of morality and justice" as to justify nonenforcement of an arbitration award under the public policy exception. The Court doubts that it is.

However, even if the Court assumes that issue preclusion generally is a public policy goal that requires nonenforcement of an award, there are several reasons why the Court is skeptical that its application here would advance the policies behind issue preclusion. First and foremost, Venco was not a party to the arbitration between Symbion and LBG/BV. Symbion argues that "it is

settled law that even a nonparty to a prior proceeding may be collaterally estopped from re-litigating issues conclusively determined in a prior proceeding," citing a litany of cases from 1986 through 2005. See Resp.'s Br. at 4. But Symbion ignores the fact that the Supreme Court weighed in on the issue in 2008 in Taylor v. Sturgell. There, the Supreme Court explained that far from being "settled law," the case law governing when a litigant could face preclusion based on a prior suit where it was a nonparty was "far from consistent." Taylor, 553 U.S. at 895–96 (citing 18A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4457 (2d ed. 2002), at 513 (describing nonparty preclusion as lacking a "clear or coherent theory")). More importantly, the Court went on to explain that nonparty preclusion is only appropriate in extremely narrow circumstances, lest the due process rights of the nonparty be violated. See id. at 897–98. The Court instead outlined six grounds under which a nonparty could be precluded in a future action. See id. at 904.

These six categories are as follows. First, when the nonparty in the first action (who is a party in the second action) agrees to be bound by the prior judgment. Id. at 893. Second, where the nonparty has a pre-existing "substantive legal relationship[]" with a party that is bound by the first action, such as a successive property owner, where the former property owner was bound by the first action. Id. at 894 (internal quotation marks omitted). Third, where the nonparty was "'adequately represented by someone with the same interests who [wa]s a party' to the [prior] suit," such as a trustee or a guardian. Id. (first alteration in original) (quoting Richards v. Jefferson County, 517 U.S. 793, 798 (1996)). Fourth and fifth, when the nonparty and a party in the first suit are functionally each other's proxies. This might happen either because the nonparty was pulling the strings in the first action, or because the party from the first action is calling the shots in the second action. Id. at 895. And sixth, where there is a special statutory scheme, such as

bankruptcy, that "'expressly foreclose[s] successive litigation by nonlitigants.'" <u>Id.</u> (quoting <u>Martin v. Wilks</u>, 490 U.S. 755, 762 n.2 (2001)).

The Supreme Court notably rejected any doctrine that "extend[s] nonparty preclusion beyond . . . the proper bounds" delineated by those six categories. <u>Id.</u> at 904. Indeed, it explained that its decisions "emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." <u>Id.</u> at 898; <u>see also</u> <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.")

Here, the only potentially applicable category is the third: that Venco was adequately represented by a party in the prior arbitration that had the same interests. The Supreme Court applied this theory of nonparty preclusion in <u>Taylor</u>. There, it explained that the litigant in the first suit could not have adequately represented the nonparty in that proceeding because "nothing in the record indicates that [the party in the first suit] understood himself to be suing on [the nonparty's] behalf, that [the nonparty] even knew of [the party's] suit, or that the Wyoming District Court took special care to protect [the nonparty's] interests." <u>553 U.S.</u> at 905; <u>see also</u> <u>id.</u> at 900 ("A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented") (internal citations omitted).

Symbion argues that Venco's interests were adequately represented in the first arbitration proceeding by Symbion itself. Symbion contends that its position with respect to LBG/BV is

identical to Venco's relationship to Symbion: that of a subcontractor to a contractor seeking payment for work performed. But as in <u>Taylor</u>, "nothing in the record indicates that [Symbion] understood [itself] to be [proceeding] on [Venco's] behalf." <u>Id.</u> at 905. In fact, quite the opposite: during the evidentiary hearing in the arbitration challenged here, Symbion's CEO, Paul Hinks, testified that Venco was not informed of the prior arbitration, and that at the time Symbion viewed Venco as adverse to its interests:

> [Arbitrator]: And do you know whether Symbion or its lawyers ever asked [Venco] to participate in the prior arbitration?
> Hinks: No, we wouldn't have done it at that stage because of what position [Venco] had taken. Clearly, on the other side.
> [Arbitrator]: At that point, you were adverse to [Venco], correct?
> Hinks: Yes. It was clear that [Venco] was with [LBG/BV]. They were in cahoots.

Hearing Tr., Ex. A, Pet.'s Reply & Opp'n [ECF No. 13-1] at 1403:16–1404:7. Thus Symbion is left in the untenable position of arguing that it represented Venco's interests at the same time that it was adverse to those interests. Moreover, there is nothing in the prior award indicating that the tribunal took special care to protect Venco's interests.

Symbion's argument therefore fails. A nonparty cannot be adequately represented by a party whose interests are adverse. <u>See</u> <u>Taylor</u>, 553 U.S. at 900. Indeed, to conclude otherwise would raise serious due process concerns. <u>See</u> <u>Kourtis v. Cameron</u>, 419 F.3d 989, 998 (9th Cir. 2005) ("a conflict of interest between a non-party and his purported representative forecloses the possibility of privity because a nonparty cannot be adequately represented by a person with whom he is in conflict"), <u>abrogated in part by</u> <u>Taylor</u>, 553 U.S. at 892 n.3.[1]

But the Court need not actually decide whether or not issue preclusion should have bound

---

[1] Even if Venco were in privity with Symbion in the earlier arbitration, issue preclusion of a nonparty based on a prior arbitration proceeding (rather than a court proceeding) might raise separate due process concerns. Arbitration is a private dispute resolution mechanism, and while there is a strong public policy in favor of enforcing arbitration awards between parties who have agreed to that arbitration, very different concerns could arise when enforcing a decision against a litigant who never consented to the first arbitration.

the second tribunal to the decisions of the first. For purposes of determining whether a public policy of issue preclusion requires this Court to set aside the award, it is enough to say that the Court has grave concerns over whether issue preclusion is even applicable in this instance—and thus Symbion has not demonstrated that the "most basic notions of morality and justice" require nonenforcement.[2] The Court therefore concludes that the public policy exception to the New York Convention does not apply, and the Court is therefore obligated to enforce the arbitral award against Symbion.

## II.     The U.K. Proceedings, The Requested Stay, and the Requested Security Bond

In August 2016 Symbion challenged the arbitration award in the U.K. High Court of Justice in London, England. Before this Court, it asks, in the alternative, for a stay pending the outcome of those proceedings. The High Court of Justice denied Symbion's challenge and ruled in favor of Venco. See Symbion Power LLC v. Venco Imtiaz Constr. Co., [2017] EWHC 348 (TCC) (March 10, 2017). Symbion has indicated that it is seeking leave to appeal that decision.

When evaluating a motion to stay enforcement of an arbitration award pending a foreign proceeding, courts generally look to the factors the Second Circuit identified in Europcar Italia, S.P.A. v. Maiellano Tours, Inc., 156 F.3d 310, 317–18 (2d Cir. 1998). See, e.g., Getma Int'l v. Republic of Guinea, 142 F. Supp. 3d 110, 114–15 (D.D.C. 2015); Gold Reserve Inc. v. Bolivarian Republic of Venezuela, 146 F. Supp. 3d 112, 135 (D.D.C. 2015). Those factors are:

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

---

[2] There are other reasons why issue preclusion might not apply in the second arbitration proceeding. For example, it is not clear from the briefing whether the issue in the second arbitration proceeding was "actually litigated" in the first arbitration, because the subcontracts at issue are not identical. Although both Symbion and Venco are parties to the master contract with LBG/BV, the subcontract between Symbion and LBG/BV is different from the subcontract between Symbion and Venco. However, the Court need not reach this issue.

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties . . . ; and

(6) any other circumstances[.]

Europcar, 156 F.3d at 317–18 (internal citations omitted). The Europcar court emphasized that a stay "should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." Id. at 317. Thus, because the "primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors" should have the most weight. Id. at 318.

Here, the first and second factors both weigh in favor of enforcing the award and denying a stay. This Court has already determined that enforcement is appropriate, and further delay would lead to more protracted and expensive proceedings than have already occurred. Venco first requested arbitration approximately four years ago, which is a length of time that courts often consider long enough to justify immediate enforcement. See Chevron Corp. v. Republic of Ecuador, 949 F. Supp. 2d 57, 72 (D.D.C. 2013) (six years between beginning of arbitration and confirmation of award weighs in favor of denying a stay); G.E. Transp. S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 139 (D.D.C. 2010) (four year delay weighs in favor of denying a stay).

In Getma International v. Republic of Guinea, the court disagreed, holding that while denying the stay might promote a swift resolution in the short term, if a foreign court reached the opposite conclusion, then unwinding the payments would lead to more extended litigation in the

long run. 142 F. Supp. 3d at 114. Thus, a court "cannot 'overlook agreed-upon arbitral procedures,'" i.e., the right of a party to challenge the award in court, "in favor of the <u>enforcement</u> of an arbitration award." <u>Id.</u> (quoting <u>Polimaster Ltd. v. RAE Sys., Inc.</u>, 623 F.3d 832, 841 (9th Cir. 2010)) (some internal quotation marks omitted). But that court explained the risk of a foreign court setting aside the award was particularly great because no foreign tribunal had yet ruled on the matter—unlike in this case. <u>See</u> <u>id.</u> at 115. That brings us to the second factor.

The foreign proceeding here has completed its first phase—the High Court of Justice ruled in favor of Venco. This suit is therefore unlike <u>Getma</u> on both the first and second factors. <u>Compare</u> <u>Getma Int'l</u>, 142 F. Supp. 3d at 115–16 (finding second factor weighs in favor of stay because no foreign tribunal had yet ruled on validity of award), <u>with</u> <u>Chevron Corp.</u>, 949 F. Supp. 2d at 72, <u>aff'd</u>, 795 F.3d 200 (D.C. Cir. 2015) (finding the first and second factors weigh in favor of enforcement because one foreign tribunal ruled in favor of the award), <u>and</u> <u>G.E. Transp.</u>, 693 F. Supp. 2d 139 (same). Moreover, this Court has no way of knowing whether an appeal in the U.K. proceeding will be permitted at all, much less how long any appeal might take, and is thus hesitant to stay enforcement indefinitely. Thus both the first and second factors weigh in favor of enforcing the award immediately, especially given that one U.K. court has already confirmed the award.

The third factor, however, weighs in favor of staying enforcement. As Venco concedes, the U.K. Arbitration Act's standard of review is slightly less deferential than that of the New York Convention, giving that court more leeway to not enforce the award. <u>See</u> Pet.'s Reply & Opp'n at 27. This "weighs mildly in favor" of granting a stay. <u>See</u> <u>Getma Int'l</u>, 142 F. Supp. 2d at 116 (citing <u>Interdigital Commc'ns Corp. v. Samsung Elecs. Co.</u>, 528 F. Supp. 2d 340, 361 (S.D.N.Y. 2007)).

The fourth factor does not weigh in favor of either party. On the one hand, "[Symbion] initiated the foreign proceeding to set aside the award, which weighs against a stay." Getma Int'l, 142 F. Supp. 2d at 116 (citing Chevron Corp., 949 F. Supp. 2d at 72). But on the other hand, Symbion filed its suit in the U.K. first, which weighs in favor of a stay out of respect for "international comity." See Europcar, 156 F.3d at 318; Telcordia Techs., Inc. v. Telkom SA, Ltd., 95 F. App'x 361, 362 (D.C. Cir. 2004) (nonprecedential). Venco asserts that Symbion only filed the U.K. suit as a delay tactic, the next in a long line of similar obstructionist actions. Symbion disagrees, and asserts the subcontract between Venco and Symbion specifically designates the United Kingdom as the proper forum to challenge the award—and thus that Symbion's suit is well within its legal rights as agreed to by Venco. See Resp.'s Reply at 3. Based on the materials submitted, "the Court cannot say that [Symbion's actions] are so obviously either legitimate or vexatious that this factor should sway its analysis." Chevron Corp., 949 F. Supp. 2d at 72. Thus the fourth factor is a wash.

The fifth factor, much like the second, weighs in favor of denying the stay. Although there is a risk that the U.K. appellate court could set aside the award, on balance the need for prompt enforcement of the award outweighs that risk. See id. at 72–73.

Finally, neither party has identified any additional information that is relevant to the Court's consideration, and hence, the sixth factor is not relevant.

In summary, the first and second factors, which are the most important, weigh in favor of enforcement, as does the fifth. The third weighs against enforcement. Given this balance of the factors, the Court finds that granting a stay would not be appropriate under the Europcar framework.

## CONCLUSION

For the reasons stated above, Venco's petition to confirm the arbitral award will be granted, and Symbion's motion for a stay will be denied.[3] Venco's alternative motion for security will be denied as moot. A separate order has been issued on this date.


/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>May 31, 2017</u>

---

[3] Venco requests payment of (i) "$4,068,659, plus post-award interest at a rate of 4% per annum compounded monthly from May 1, 2016 until full payment thereof"; (ii) past interest "in the sum of $1,243, 580.73, plus post-award interest at the rate of 4% per annum, compounded monthly from May 1, 2016 until full payment thereof"; (iii) $2,690,277 in legal costs of the arbitration proceeding, "plus post-award simple interest at a rate of 4% per annum from July 12, 2016 until full payment thereof"; and (iv) $460,000 in payment for the costs of the arbitration, "plus post-award simple interest at a rate of 4% per annum from July 12, 2016 until full payment thereof." Pet.'s Br. at 10–11. These are the same amounts and interest rates that are contained in the arbitration award. Award at 140–141. Symbion does not contest that the tribunal ordered payment in these amounts and at these interests rates, nor does Symbion raise any arguments that these interest rates are improper. Therefore, the Court will order the requested payments.

Venco also requests that Symbion be ordered to pay its attorney's fees and costs for this petition to confirm the award. Pet.'s Br. at 11. However, Venco has not briefed this issue or provided any basis in statute, contract, or this Court's inherent authority for the Court to award attorney's fees in this matter. Neither has Symbion responded to this request in its briefing. The Court will therefore deny Venco's request for attorney's fees and costs incurred in this civil action.